IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CASEY RAFEAL TYLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV1142 |
| | ) | |
| KATY POOLE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendants Katy Poole, William Bullard, Ronald Covington, Carol Torres, Jerry Ingram, Jr., and Thorne Locklear's motion for summary judgment (Docket Entry 19). Though a Roseboro letter was sent to Plaintiff Casey Rafeal Tyler on June 24, 2019 (Docket Entry 21), Plaintiff has not filed a response. For the reasons stated herein, the Court will recommend that Defendants' motion for summary judgment be granted in part and denied in part.

### I. BACKGROUND

Plaintiff is a *pro se* prisoner of the State of North Carolina and was previously incarcerated at Scotland Correctional Institution ("Scotland"). (Complaint at 3, Docket Entry 2; Minute Entry 1/7/2019.) At all times relevant, Defendant Poole was the Correctional Facility Administrator of Scotland. (Answer ¶ 1(B)(1), Docket Entry 11.) Defendant Bullard was an Assistant Superintendent III at Scotland. (*Id.* ¶ 1(B)(2).) Defendants Covington, Torres, and Locklear were Correctional Captains III at Scotland. (*Id.* ¶¶ 1(B)(3), 1(B)(4),

1

1(B)(6).) Defendant Ingram was a Correctional Housing Unit Manager III at Scotland (*Id.* ¶ 1(B)(5).)

On December 22, 2017, Plaintiff commenced the instant action by filing a complaint. (Docket Entry 2.) In the complaint, Plaintiff alleged that Defendants violated his rights under the First Amendment, specifically his rights under the Establishment Clause[1] and his right to freedom of association; the Eighth Amendment; and the Fourteenth Amendment.[2] (*Id.* at 4.) The Complaint alleges (1) the existence of a policy prohibiting Scotland prisoners from attending religious services which are not associated with their documented religious affiliations; (2) excessive use of force by correctional officers when Plaintiff attempted to attend a service for which he had no documented religious affiliation; (3) Plaintiff's subsequent placement in restrictive housing—dressed only in his underwear—for six days; and (4) deception by a defendant correctional officer that caused Plaintiff to break a hunger strike. (*Id.* at 6-7.) Plaintiff sues all Defendants in their individual and official capacities, and Defendants Poole and Bullard in their official capacities as well. (*Id.* at 2.) Plaintiff seeks declaratory relief and monetary damages. (*Id.* at 8.)

On May 7, 2018, Defendants filed an answer. (Docket Entry 11.) Defendants filed the instant motion for summary judgment on June 21, 2019. (Docket Entry 19.) The following day, they filed an accompanying brief and several exhibits and affidavits. (Docket

---

[1] For the reasons stated herein, the Court has construed Plaintiff's Establishment Clause claim as a Free Exercise Claim.

[2] Though Plaintiff states that one of his causes of action is the Fourteenth Amendment (Compl. at 4), his pleadings do not make it immediately apparent how he thinks that right was violated (*see* Compl. at 6-7). Nor has either party briefed any alleged Fourteenth Amendment violation. The Court thus recommends dismissal of any Fourteenth Amendment claims Plaintiff may have.

Entries 20, 20-1, 20-2, 20-3, 20-4.) Though a Roseboro letter was sent to Plaintiff (Docket Entry 21), he has not filed a motion or brief, nor has he submitted any evidence, and the time to do so has long since elapsed.

## II. DISCUSSION

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact.[3] *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

---

[3] "[I]n considering a motion for summary judgment, [the Court] '*must* review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'" *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 409 n. 8 (4th Cir. 2010) (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)) (emphasis in original).

In evaluating Defendants' motion for summary judgment, the Court will first consider Defendants' arguments regarding mootness and sovereign immunity, before turning to the remaining claims and Defendants' assertions of qualified immunity.

**A. <u>Mootness</u>**

The Court first considers Defendants' argument that any claims raised by Plaintiff that seek injunctive or declaratory relief are moot, as Plaintiff is no longer incarcerated in Scotland. (Docket Entry 20 at 10-12.) "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for the purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). However, a case that is not "live," but is "capable of repetition, yet evading review," is not moot. *Murphy*, 455 U.S. at 482. "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009); *see also Incumaa v. Ozmint*, 507 U.S. 281, 286-287 (4th Cir. 2007). Here, Plaintiff's claims for injunctive or declaratory relief are moot because he is no longer incarcerated at Scotland. Nor are the claims here "capable of repetition, yet evading review" if he were to return to Scotland, as "he would have sufficient opportunity to re-initiate an action seeking injunctive relief." *See Rendelman*, 569 F.3d at 186. Therefore, Plaintiff's claims for injunctive or declaratory relief cannot survive and should be dismissed.

**B. <u>Sovereign Immunity</u>**

The Court next considers Defendants' argument that the claims against Defendants Poole and Bullard in their official capacities are barred by the Eleventh Amendment. (Docket

Entry 20 at 10-12.) "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). It follows that just as "the Eleventh Amendment bars a damages action against a state in federal court," it also bars suits against state officials in their official capacity. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985). Here, both Defendant Poole and Defendant Bullard are employees of the State of North Carolina. Therefore, claims seeking damages that are brought against them in their official capacity are barred and should be dismissed.

C. **Plaintiff's Remaining Claims**

The Court finally considers Defendants' argument that they are entitled to judgment as a matter of law with regards to all of Plaintiff's claims. (Docket Entry 20 at 12.) Defendants assert the defense of qualified immunity. (*Id.* at 22.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Pidpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983. . .."). Thus, the two-step qualified immunity inquiry requires a court to determine (1) whether Plaintiff has alleged facts that make out a violation of a constitutional right and (2) whether that right was clearly established at the time of the violation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Booker*

5

*v. South Carolina Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017). The Court may consider the prongs of the test in any order. *Pearson*, 555 U.S. at 236.

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and alteration omitted). In determining whether a right is clearly established, the Court first considers controlling authority in the jurisdiction, i.e. the decisions of the United States Supreme Court, the Fourth Circuit Court of Appeals, and the North Carolina Supreme Court. *See Booker*, 855 F.3d at 538. Where there is no controlling authority, the Court may consider persuasive authority from other jurisdictions. *Id.* at 539. "It is important to emphasize that [a qualified immunity] inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (internal quotation marks omitted) (quoting *Saucier v. King*, 533 U.S. 194, 201 (2001)).

1. **First Amendment Free Exercise Clause[4]**

The Court first addresses Plaintiff's First Amendment free exercise of religion claims.[5] Plaintiff claims that he has "been ordered away from every weekly religious service ever held at Scotland, at one time or another, due to [his] documented religious affiliation each time."

---

[4] The Court notes that Plaintiff does not bring a claim under Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc *et seq*.

[5] Though Plaintiff writes that his cause of action is based in the Establishment Clause (Compl. at 4) the Court construes his claims as bringing a claim under the Free Exercise Clause. To the extent that Plaintiff does indeed intend to argue that the religious services policies of Scotland violates the Establishment Clause, Defendants are entitled to qualified immunity because the proposition that identical or similar policies violate the Establishment Clause is not clearly established.

(Compl. at 6.) The record demonstrates that, on January 16, 2015, Plaintiff attempted to enter a Muslim service, though he was listed in prison records as affiliated with Judaism, and was denied entry. (Ex. G at 2-3, Docket Entry 20-1.) Plaintiff was denied entry because Scotland has a policy of limiting religious service attendance to individuals on a list, which appears derived from inmates' self-professed religious affiliation. (Ex. C at 1-2, Docket Entry 20-1.) Indeed, Plaintiff admitted to one correctional officer during this incident that he had not changed his religion. (*Id.* at 1.)

An inmate alleging violations of his rights under the Free Exercise Clause must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018) (citing *Thomas v. Review Bd. Of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). A substantial burden occurs when a policy or practice places substantial pressure on the inmate to violate his beliefs or change his behavior. *Id.* "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). In determining whether a prison regulation is reasonable, courts consider several factors: (1) whether there is a valid, rational connection between a legitimate government interest and the regulation; (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) whether there are ready alternatives to the regulation. *Id.* at 89-91. An inmate's "First Amendment rights may be restricted in the interest of prison security." *Hause v. Vaught*, 993 F.2d 1079,

1082 (4th Cir. 1993) (discussing the rights of pretrial detainees); *see also Bell v. Wolfish*, 441 U.S. 520, 545-547 (1979) (same).

Here, Defendants do not challenge the sincerity of Plaintiff's religious beliefs, nor do they argue that Scotland's policy of limiting does not place a substantial burden on those beliefs. Rather, they contend that the policy is reasonably related to legitimate penological interests (Docket Entry 20 at 12.) In her affidavit, Defendant Poole states that the policy exists to help "limit the overflow of offenders attending for reasons other than worship," which is necessary because "[o]ffenders who have restrictions related to their custody or control status that in part restricts what other offenders they may associate with in the facility will attempt to gather during corporate religious services." (Affidavit of Katy Poole ¶ 23, Docket Entry 20-1.) Therefore, Defendants argue, the policy serves as a way to ensure the safety of inmates and facility staff. (*Id.*)

Applying the *Turner* factors to this case, the Court determines that there is no genuine issue of material fact regarding the reasonableness of the policy. First, there is a valid, rational connection between the policy of limiting attendance to corporate religious services to individuals on a pre-written list and the legitimate penological concern of safety for inmates and correctional facility staff. (*See id.*) Second, alternative means of exercising the right remain open to prisoners, as they can seek to have their names placed on the list or change their religious affiliation. (*See* Ex. I at 5, Docket Entry 20-1 ("Inmates shall have the freedom to make a religious commitment, change a religious commitment, or reject religion altogether"

and may due so with a Declaration of Faith form.).)[6]  Therefore, summary judgment should be granted with respect to Plaintiff's First Amendment Free Exercise Clause claims.

   2. **First Amendment Freedom of Association**

The Court next addresses Plaintiff's freedom of association claim under the First Amendment.  The Court concludes that Defendants are entitled to summary judgment here for the same reasons they are entitled to summary judgment for Plaintiff's Free Exercise Clause claims.

   3. **Eighth Amendment Excessive Force**

The Court now turns to Plaintiff's excessive force claims.  Plaintiff claims that, in order to prevent him from attending the January 16, 2015 religious service, Defendants Ingram and Locklear, as well as other correctional officers, wrestled him to the floor.  (Compl. at 6.)  According to Plaintiff, while he was on the floor, Defendant Locklear applied a chokehold to his neck that was so tight that Defendant Locklear's wristwatch cut Plaintiff's neck and Plaintiff became "close to death."  (*Id.*)  Plaintiff claims that when another correctional officer ordered Locklear to get off Plaintiff, Defendant Locklear "stood up [and] mashed his boot into one side of [Plaintiff's] face, pinning [Plaintiff's] head to the floor as other [correctional officers] handcuffed [Plaintiff]."  (*Id.*)  Plaintiff alleges that he suffered "indescribable panic" and "severe bodily pain" from this altercation with correctional officers.  (*Id.*)

---

[6] The Court does not address the third and fourth *Turner* factors, the impact of accommodations and the existence of alternatives to the regulation, because neither party argues these points, nor are the answers apparent based on the evidence in the record.  However, even if these factors were favorable to Plaintiff, the Court would still find the policy reasonable, especially given its finding that there is a valid rational connection between the policy and a legitimate penological concern.

The Court has several pieces of relevant evidence to consider, including: Defendant Ingram's affidavit (Affidavit of Jerry Ingram, Jr., Docket Entry 20-3), the incident report completed by investigating officer Brian McKnight (Ex. C), and a surveillance video of the incident (Ex. D, Docket Entry 20-1.) The record demonstrates that at approximately 1:05 p.m., Plaintiff exited his housing unit to attend a religious service though his name was not on the list. (Ingram Aff. ¶ 8; Ex. C at 7.) Defendant Locklear, as well as another correctional officer, Daphne Leggett, followed Plaintiff through the doorway and ordered him to return to the unit, which he did not do. (*Id.*) These officers attempted to restrain Plaintiff, but Plaintiff "snatched away" and continued to walk. (Ingram Aff. ¶ 8; Ex. D.) Meanwhile, several other facility staff approached Plaintiff. (Ex. D.) Defendant Ingram then ordered Plaintiff to stop, but Plaintiff did not do so. (Ingram Aff. ¶ 9.) A total of five correctional officers, including Defendants Ingram and Locklear, surrounded Plaintiff while he had his back to the wall. (Ex. D.) Defendant Ingram attempted to grab Plaintiff's right hand, but Plaintiff pulled forward and a struggle ensued between him and the correctional officers. (Ingram Aff. ¶ 9; Ex. D.) Plaintiff and several correctional officers forced him prone onto the ground. (Ingram Aff. ¶ 9; Ex. C at 7-9; Ex. D.) Plaintiff refused orders to stop resisting and additional correctional officers arrived to assist. (Ingram Aff. ¶ 9; Ex. D.) Plaintiff was placed in handcuffs, assisted onto his feet, and escorted away. (*Id.*) At no point did Defendant Ingram see Defendant Locklear place Plaintiff in a chokehold or grab his neck. (Ingram Aff. ¶ 11.) Furthermore, the video does not show Defendant Locklear apply a chokehold to Plaintiff or stand up and place his boot on or near Plaintiff's face. (Ex. D.)

Plaintiff was seen shortly after the use of force by medical staff, who noted that Plaintiff suffered superficial scratches to his forehead, neck, and nose, mild redness of his chest and throat areas, self-reported moderate tenderness to the left jawbone and was not in distress, and Plaintiff was released from medical after application of first aid. (Ex. C at 20.)

"An inmate's Eighth Amendment excessive force claim involves both an objective and a subjective component." *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). The objective component is established when more than *de minimis* force is applied. *Hudson v. McMillian*, 503 U.S. 1, 10 (1992). The subjective component is established when a defendant acts with a sufficiently culpable state of mind, i.e., "wantonness in the infliction of pain." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "[W]hether such wantonness can be established . . . 'ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Brooks*, 924 F.3d at 113 (quoting *Whitley v. Albers*, 475 U.S. 312, 320-321 (1986)). "Corrections officers act in a 'good faith to maintain or restore discipline . . . not only when they confront immediate risks to physical safety, also when they attempt to 'preserve internal order' by compelling compliance with prison rules and procedures." *Id.* (quoting *Hudson*, 503 U.S. at 6-7.) However, when correctional officers "inflict pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination," they have improperly used force maliciously. *Id.* (citing *Williams*, 77 F.3d at 765).

Here, the record establishes that those Defendants and other correctional officers who exercised force against Plaintiff did so with the intent of forcing compliance with prison policy

11

regarding corporate religious worship. Therefore, it is beyond a genuine issue of material fact that Plaintiff cannot satisfy the subjective prong for an Eighth Amendment excessive use of force claim and Defendants are entitled to summary judgment.

### 4. Eighth Amendment Condition of Confinement

The Court next considers Plaintiff's condition-of-confinement claim. Plaintiff alleges that he was placed in a dirty cell for six days, wearing nothing but his underwear, deprived of his personal property, bedding, and toiletries, and not permitted to shower, write letters, or file grievances. (Compl. at 6-7.) Plaintiff further alleges that he was unable to sleep due to the floor, the steel bed frame, and every other surface in the cell being "ice-cold." (*Id.* at 6.) Plaintiff attributes the decision to place him in restrictive housing to Defendant Bullard and contends that Defendant Covington initially supervised his placement and ordered the removal of his clothes. (*Id.*)

The Court initially notes that no evidence in the record controverts Plaintiff's condition-of-confinement allegations. Defendant Poole's affidavit discusses North Carolina Department of Public Safety's policy regarding restrictive housing, including the rule that inmates placed in public housing are deprived of all items except for a t-shirt and underwear, which can be returned over the course of several hours due to good behavior. (Poole Aff. ¶¶ 16-17; Ex. E, Docket Entry 20-1.) However, other than admitting that Plaintiff was placed in restrictive housing between January 15, 2015 and January 22, 2015 (Poole Aff. ¶ 18),

Defendants have submitted nothing to the record regarding the conditions Plaintiff *actually* faced, or the state of mind of the relevant Defendants.[7]

"The Eighth Amendment, which prohibits infliction of 'cruel and unusual punishments,' applies to claims by prisoners against corrections officials challenging conditions of confinement." *Porter v. Clarke*, 923 F.3d 348, 355 (2019) (citations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("The [Eighth] Amendment also imposes duties on [correctional] officials, who must provide humane conditions of confinement . . .."). Eighth Amendment condition-of-confinement claims are evaluated by a two-part test that has both an objective and subjective component. *Id.* "First, the deprivation alleged must be, objectively, sufficiently serious." *Farmer*, 511 U.S. at 834 (internal citations and quotation marks omitted). To be "sufficiently serious," "a prison official's act or omission must result in the denial of 'the minimal civilized measures of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Second, "a prison official must have a sufficiently culpable state of mind." *Id.* (internal quotation marks omitted) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "That state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 302-303). "A claim of deliberate indifference . . . implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the

---

[7] Defendants argue that "Plaintiff cannot simply rely on his unsworn pleadings" given that Defendants have moved for summary judgment. (Docket Entry 20 at 16). However, that is not quite correct. Rather, as stated above, once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587. Defendants do not meet their burden here because they have introduced any evidence to the record that controverts Plaintiff's condition-of-confinement claim.

danger notwithstanding the notice." *White ex rel. White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997).

The Court concludes that Plaintiff, by alleging that Defendants placed him a dirty cell for six days, wearing nothing but his underwear despite the steel bed frame and floor being too cold to allow him to sleep, depriving him of his personal property, bedding, and toiletries and barring him from showering, has made out an Eighth Amendment condition-of-confinement-violation. Sufficient clothing for one's environment and proper sanitation are necessary for humane conditions of confinement. *See Farmer*, 511 U.S. at 832 ("[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care . . .."); *Webb v. Deboo*, 423 Fed. App'x 299, 301 (4th Cir. 2011) (holding that an inmate stated a claim when he alleged that "his prison's overcrowding and lack of sanitation are exposing him to a substantial risk of serious harm"); *Elmore v. Saunders*, No. 1:13-CV-515, 2014 WL 4540325 at 4 (M.D.N.C. Sept. 11, 2014) (holding that a plaintiff's condition-of-confinement (or, "deliberate indifference") claim survived a motion to dismiss when he alleged that he was held in a cell for four days without "water to wash his hands after elimination or before eating, despite his requests, combined with the denial of any shower and bedding, despite cold temperatures").

Furthermore, to the extent Defendants argue that they are entitled to qualified immunity because the right alleged here is not sufficiently established, that argument is without merit. Indeed, Scotland correctional staff were defendants in a United States District Court decision dealing with similar facts and decided several months prior to the incident here. *See Elmore,* 2014 WL 4540325. A reasonable officer thus would have understood that the actions

here violated clearly established law. Accordingly, the Court will recommend denying Defendants motion for summary judgment with regards to Plaintiff's condition-of-confinement claims.

### 5. Claims Against Defendant Torres

Plaintiff alleges Defendant Torres promised to lift his restrictive housing status if he would break his hunger strike by eating a meal and reneged on that promise when he did in fact eat. (Compl. at 7.) It is not apparent from the pleadings what constitutional violation Plaintiff alleges Defendant Torres committed. Additionally, Defendant Torres states that she does not recall having a conversation with Plaintiff while he was in restrictive housing (Affidavit of Carol Torres ¶ 9, Docket Entry 20-2), while Plaintiff provides no evidence to the contrary. Therefore, there is no genuine dispute of material fact regarding any claims Plaintiff may have against Defendant Torres regarding the alleged broken deal to end Plaintiff's hunger strike, and summary judgment should be granted with regard to those claims.

## III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 19) be **DENIED** with regard to Plaintiff's condition-of-confinement claims and **GRANTED** with regard to all other claims.

_____
Joe L. Webster
United States Magistrate Judge

February 14, 2020
Durham, North Carolina

15